# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN MCCARTHY, | ) |
| Plaintiff, | ) |
| | ) No. 17 C 1122 |
| v. | ) |
| AT&T MOBILITY SERVICES LLC, | ) Judge Thomas M. Durkin |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Brian McCarthy sued defendant AT&T Mobility Services LLC ("AT&T") in a *pro se* complaint for employment discrimination. AT&T moves to dismiss McCarthy's complaint and seeks fees and costs as a discovery sanction. R. 51. For the following reasons, the Court denies AT&T's motion without prejudice.

## Background

McCarthy filed this *pro se* lawsuit against AT&T on February 13, 2017 for discrimination, retaliation, and harassment based on his sexual orientation, age, and disability. R. 1. AT&T served McCarthy with discovery requests and a notice of deposition on March 2, 2018. R. 47-1. On June 1, 2018, AT&T filed a motion to compel asking the Court to order McCarthy to address nine incomplete discovery items, including verifying his interrogatory answers, responding in writing to AT&T's requests for production, and providing more complete interrogatory responses. R. 47 at 8-10.

The Court held a hearing on AT&T's motion to compel on June 6. R. 50. At that hearing, McCarthy explained that he would "absolutely" be able to provide the information sought by AT&T, and that he had "been working on it the last five days." *Id.* at 5. The Court "order[ed] that full answers be given to . . . defendant's discovery responses in seven days"—*i.e.*, by June 13. *Id.* at 6. The Court warned McCarthy that if he did not comply, AT&T would "be back in on a motion to dismiss your complaint for failure to comply with [the Court's] order." *Id.* The Court made clear that it was "not limiting the responses in any way, having heard no objection [to the requests]." *Id.* at 7.

AT&T asked the Court to advise McCarthy that he "ha[d] to include releases for any medical providers that treated him for the disabling condition." *Id.* at 6. McCarthy responded that "[a]ll those doctors' names were provided," along with "releases." *Id.* at 8. AT&T said it had reason to believe McCarthy had other providers. *Id.* at 9. McCarthy responded that he had a back surgeon he had not identified, and the Court explained, "[y]ou need to provide . . . the name immediately and then a notarized release within seven days." *Id.* The Court further advised McCarthy to "think hard about all the providers [he] had," because if he did not identify them all before his deposition, AT&T would "have to take [his] deposition again, and they [would] seek costs to do that second deposition." *Id.* at 9-10.

At the conclusion of the hearing, the Court declined AT&T's request for fees, explaining:

> I'm not going to impose fees. . . . I carefully reviewed the email exchanges. Mr. McCarthy was responsive. I impose fees when people choose not to participate in the judicial process. He's participated. And I think some of the failure to provide records is more based on the fact that he's pro se and was not fully aware of what his obligations are. He is now, so there will be no second chance on this if you seek fees in the future.

*Id.* at 10.

Apparently, as AT&T does not say otherwise, McCarthy complied with the majority of AT&T's requests by the June 13 deadline. But he did not provide written responses to AT&T's requests for production. And through documents McCarthy produced, AT&T learned that McCarthy had two additional physicians for whom he had not provided releases. R. 51-4 at 2. On July 2, AT&T sent McCarthy an email instructing him to "provide releases for these and any other physicians you have failed to disclose by tomorrow morning, July 3." *Id.* McCarthy did not comply with AT&T's deadline.

On July 9, AT&T sent McCarthy a letter by email and FedEx renewing its request for releases from the two physicians identified in AT&T's July 2 email, and reminding McCarthy of his obligation to provide written responses to AT&T's requests for production. *Id.* at 5-6. The letter also reminded McCarthy to produce his tax returns from 2012 to present (*id.*)—the subject of one of AT&T's requests for production, but not an issue specifically identified in AT&T's motion to compel. *See* R. 47. AT&T gave McCarthy a deadline of July 13 to comply with the requests in the July 9 letter. R. 51-4 at 5-6. McCarthy did not meet AT&T's deadline.

3

On July 18, AT&T filed its motion for sanctions in the form of dismissal with prejudice and fees and costs associated with its motions to dismiss and to compel. R. 51 at 4. That same day, McCarthy sent AT&T two emails. The first responded to AT&T's email attaching the July 9 letter, stating:

> Today is the first day I am reading this email. As a result I was unable to respond to you immediately. You only allowed a few days and as I told you I am out of town. I was also never asked to provide you with my Tax returns from 2012 to present. It will take me a few days to acquire that information . . . . I am not sure what medical releases you are claiming you have not received. I provided you with all the releases we discussed and that you requested. . . . If you would like additional information from me I request that you provide me with adequate time to respond. . . . I have limited access to email here and only receive mail forwarded from Chicago on a weekly basis.

R. 53-1 at 2. McCarthy's second email responded to AT&T's email containing a copy of AT&T's motion to dismiss, explaining:

> I provided you detailed answers to each of the interrogatories. You have had those answers for weeks and you have not mentioned anything incomplete until this email. Please let me know when we could speak to clarify. . . . I am out of town and have been for the past two weeks due to my parents['] health issues.

R. 53-4 at 2.

The next day, on July 19, AT&T supplemented its motion to dismiss, attaching a FedEx delivery receipt showing that AT&T's July 9 letter was collected at a Walgreens in Chicago on July 12. R. 53-2 at 2. This receipt, AT&T explained, calls into question McCarthy's honesty in saying that he was not in Chicago on July 12 and that he did not receive the July 9 letter until July 18. R. 53-2.

4

On July 19, McCarthy located a notary in Ohio and overnighted notarized releases for the two identified physicians. R. 55 at 20-26. And on July 20, McCarthy obtained his tax returns and emailed them to AT&T's counsel. *Id.* at 4.

In his response to AT&T's motion to dismiss, McCarthy explains that he "was notified of [his] mother's very serious medical condition" at the beginning of July, which "required [him] to return home to Akron, Ohio." R. 55 at 1. McCarthy explains that it was his husband—not him—who picked up the July 9 letter on July 12 in Chicago. In support, McCarthy submits examples of his husband's signature along with the FedEx receipt, which appear to confirm that his husband, and not McCarthy, picked up the letter. *Compare* R. 55 at 7 (FedEx proof of delivery with signature) *with id.* at 31-33 (examples of McCarthy's husband's signature). McCarthy explains that his husband mailed the July 12 letter to him in Ohio on July 14, and McCarthy picked it up on July 18. R. 55 at 2-3. AT&T's reply brief acknowledges that after McCarthy's July 19 and July 20 productions, the only outstanding item from its motions to compel and to dismiss is "complete written responses to Defendant's Requests for Production." R. 57 at 1.

**Discussion**

AT&T asks the Court to dismiss McCarthy's complaint and award fees and costs as a discovery sanction.[1] Parties who fail to comply with a court order regarding discovery are subject to a variety of possible sanctions, ranging from being unable to use non-disclosed evidence up to dismissal of the case. Fed. R.

---

[1] AT&T cites no case law in support of its motion. Nor does it identify the Federal Rule of Civil Procedure on which its request is based.

5

Civ. P. 37 (b)-(c). The Seventh Circuit has explained that "considering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case." *Maynard v. Nygren*, 372 F.3d 890, 891 (7th Cir. 2004); *accord Robinson v. Champaign Unit 4 School Dist.*, 412 F. App'x 873, 877 (7th Cir. 2011) ("Dismissal with prejudice is an extreme sanction that should be used only as a last resort in situations where the noncomplying party displayed willfulness, bad faith, or fault."). "[D]istrict courts must consider and explain why lesser sanctions would be ineffective before dismissing a case." *Robinson*, 412 F. App'x at 878.

This is not the extreme case that warrants a dismissal sanction. The record does not support a finding of willfulness or bad faith by McCarthy. To the contrary, as the Court explained at the June 6 hearing, the record shows that McCarthy has participated in the discovery process. Although there have been delays, this is not a case in which McCarthy has failed to prosecute his case or failed to make an effort to comply with discovery requests. In response to this Court's June 6 order granting AT&T's motion to compel, McCarthy complied with eight of the nine items listed in the motion. R. 47 at 8-10.

It is true that one of the nine items on AT&T's original list is still missing: written responses to AT&T's requests for production of documents. But the record does not support the conclusion that McCarthy's failure to comply with this request was willful or in bad faith. One of McCarthy's July 18 emails to AT&T appears to be directed to this issue, explaining: "I provided you detailed answers of the

6

interrogatories. You have had those answers for weeks and you have not mentioned anything incomplete until this email. Please let me know when we could speak to clarify." R. 53-4. McCarthy rightly points out that AT&T let several weeks pass after the June 13 deadline without notifying McCarthy that anything was missing, which understandably could have led McCarthy to believe that AT&T had what it needed. McCarthy also appears to be confused about the difference between written interrogatory responses and written request for production responses. The Court gives McCarthy the benefit of the doubt and attributes this misunderstanding to the fact that he is representing himself *pro se*. This was not a distinction discussed at the June 6 hearing. *See* R. 50. Nor were the written responses to the requests for production a focus at that hearing. *See id.*

The Court therefore clarifies now for McCarthy that in addition to his written interrogatory responses and to the documents he has produced, he must submit a written response to AT&T's requests for production (R. 47 at 18-30) describing the documents he has produced in response to each request and identifying any potentially responsive documents he has withheld. McCarthy should consult with the *pro se* help desk for the Northern District of Illinois with any questions about this process. The Court gives McCarthy until August 24, 2018 to comply with this order.

AT&T's motion focuses on two additional issues: (1) McCarthy's failure to produce tax returns; and (2) McCarthy's failure to provide notarized medical releases for the two previously unidentified physicians. But AT&T's motion to

compel never mentioned McCarthy's tax returns. *See* R. 47. And although the motion to compel did address McCarthy's need to identify and provide releases for his physicians, AT&T did not identify the two particular physicians and seek releases from them until its July 2 email. R. 51-4 at 2. The Court does not find that McCarthy unduly delayed, given the circumstances, in responding to these specific requests from AT&T. Very soon after he represents that he received AT&T's correspondence, on July 19 and 20, McCarthy sent AT&T his tax returns, obtained notary signatures on the releases, and overnight mailed the releases from Ohio. Nor does the record give the Court reason to believe McCarthy is lying about the fact that he was in Ohio to visit his mother in early July with limited access to mail and email. The signature on the July 12 FedEx delivery receipt for the July 9 letter appears to match McCarthy's husband's signature and not McCarthy's (*compare* R. 55 at 7 *with id.* at 31-33), and McCarthy undisputedly overnight mailed the notarized releases from Ohio (*id.* at 17-26). The Court will not sanction McCarthy for failing to comply with the short interim deadlines set by AT&T in its correspondence, especially in light of the Fourth of the July holiday and McCarthy's travel based on his mother's health issue.[2]

The Court also declines to award AT&T fees and costs at this time. The Court finds that McCarthy substantially complied with the Court's June 6 order granting AT&T's motion to compel, and that McCarthy's non-compliance is excusable under

---

[2]    The Court agrees with McCarthy that AT&T's deadline of the "morning" of "July 3" to provide notarized releases in response to AT&T's letter sent the afternoon of July 2 was not reasonable. 51-4 at 2.

8

the circumstances. But the Court warns McCarthy that if he does not comply with this Court's order to provide written responses to AT&T's requests for production on or before August 24, 2018, the Court will revisit the issue of sanctions and will strongly consider requiring McCarthy to pay AT&T's fees and costs incurred in moving to compel and to dismiss.

## Conclusion

For these reasons, the Court denies without prejudice AT&T's motion to dismiss McCarthy's complaint and for fees and costs as a discovery sanction [51]. McCarthy must provide written responses to AT&T's requests for production on or before August 24, 2018.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 10, 2018